# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 4, 2011

## TOMMY K. HINDMAN v. LOUISE HELEN HINDMAN

**Appeal from the Chancery Court for Knox County**
**No. 134307-2      Daryl R. Fansler, Chancellor**

---

**No. E2010-01052-COA-R3-CV - Filed February 11, 2011**

---

Louise Helen Hindman ("Wife") and Tommy K. Hindman ("Husband") were divorced in August of 1997, at which time the trial court approved a marital dissolution agreement ("the MDA") submitted by the parties. Relevant to the instant case, the MDA addressed future medical and educational expenses for the parties' minor child ("Son"). After Wife refused to reimburse Husband in compliance with the pertinent provisions of the MDA, he filed a petition seeking to have her held in contempt. The trial court ultimately ordered Wife to pay $43,678. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P. J., and D. MICHAEL SWINEY, J., joined.

Christopher D. Heagerty, Knoxville, Tennessee, for the appellant, Louise Helen Hindman (Dover).

James S. Sharp, Knoxville, Tennessee, for the appellee, Tommy K. Hindman.

## OPINION

## I. BACKGROUND

The pertinent provisions of the MDA at issue are as follows:

1. CHILD CUSTODY: The parties shall have joint custody of their minor child, Tommy K. Hindman, II ("T.K.") born on November 12, 1987. The

parties shall consult with one another on all major decisions involving the child's health, general welfare, overall care and maintenance, and education. Each shall make every effort to reside in close proximity to the child's school. Recognizing that the child has resided and developed extensive ties with Knox County, neither party shall attempt to move from the jurisdiction of the Court with the child, absent a court order modifying this provision.

2. VISITATION PLAN: The parties agree to a visitation plan as follows:

A. Weekly Schedule: The parties shall have alternating weeks of visitation time with the minor child with the exchange to take place on Sunday evenings. Each party shall have telephone access to the child on a 24 hour basis.

* * *

5. CHILD'S MEDICAL EXPENSES: The Husband shall maintain major medical and hospitalization insurance on the parties' minor child until said child attains majority or his class graduates from high school, whichever is later. All medical, pharmaceutical, orthodontic, optical, psychological and dental expenses not covered by said insurance shall be borne by the Husband until re-marriage of the Wife at which time all of the aforementioned medical expenses will be paid equally. . . .

6. CHILD'S EDUCATIONAL EXPENSES: The parties agree that each shall pay one-half (½) of the educational expenses of their child, including books, tuition, room and board, as long as the child is making satisfactory progress in school. This obligation applies to any education endeavor of the child that the parties, as joint custodians, agree upon, including private elementary, middle and high school and any college expenses, up to the cost of the University of Tennessee. However, when the child reaches college level, the college fund presently in existence at Morgan Keegan shall be used to satisfy his college expenses prior to any contribution being required of either party. Any college funds set aside in the future by either party, plus any income generated thereby, shall be used to satisfy that party's obligation to pay one-half (½) of education expenses.

The existing educational fund with Morgan Keegan Brokerage shall remain there with both parties as joint custodians of said account, pursuant to T.C.A. § 35-7-211, and both parties' signatures will be necessary for withdrawal of any funds unless either party is deceased.

It is the intention of the parties that they will make application to Webb [S]chool of Knoxville for T.K. beginning in the Fall of 1998. Each party will be responsible for fifty percent (50%) of all Webb tuition and expenses. However, if the child attends Webb or any other private preparatory school and the Wife remains unmarried and financially unable to bear her portion of said expenses, the Husband, will, as additional periodic alimony, pay all of the tuition and expenses until the Wife is either re-married or her economic situation is such that she can bear the expenses.

* * *

Husband initiated this contempt action in August 2006. After a hearing on February 2, 2009, a memorandum opinion and order was entered three days later in which the trial court held, *inter alia*, as follows:

At the time of the divorce the parties contemplated that their minor son, T.K., would attend Webb School if he were admitted. He was admitted to Webb and essentially attended school there from the fall of 2000 until the fall of 2004, at which time he was expelled forfeiting the entire tuition for the 2004-2005 school year. Husband paid a total of $63,481.00 for the Webb tuition and seeks one-half of that from [Wife].

The MDA obligates the wife to contribute one-half of the Webb tuition or that of any private preparatory school unless "wife remains unmarried and financially unable to bear her portion of said expenses." In that case, husband agreed to "bear her portion" of those expenses as additional periodic alimony "until wife is either remarried or her economic situation is such that she can bear the expenses." Wife says that prior to the filing of this petition the only time husband expressed an intention to seek contribution from her was in a letter of July 28, 2006. That letter, Ex. 1, pertained to the son's enrollment at Austin Peay University and no other educational expenses were referenced.

Wife remarried on June 17, 2000. The record is silent as to how the parties treated the Webb School tuition and associated costs either before or after her remarriage. The Court does not know whether husband deducted one-half of the educational expenses on his federal income tax return nor whether wife claimed the educational expenses as income even though paragraph 7 of the MDA provided that periodic alimony would be includable/deductible.

There is no proof in the record as to what wife is capable of earning. Petitioner testified that during the marriage the wife worked as an interior decorator. There is no proof as to her earnings nor whether she worked prior to their son entering school on a full time basis.

Wife currently is not employed. She testified that she cares for her two children, ages 6 and 4. She also cares for her grandson (T.K.'s son born out of wedlock).

Reading the last sentence of paragraph 6 in total, and applying a construction that renders all parts of the sentence effective, the Court concludes that it was the intent of the parties that husband would pay the Webb School tuition if wife remained unmarried and unable to pay her share, or until she became financially able to pay even if she remained unmarried. This construction would allow the husband any tax benefits that might be available to him until she remarried yet does not impose a burden upon her, which she could not financially perform. To construe the sentence otherwise would impose upon wife an obligation to pay upon remarriage even if she remained financially unable to do so.

Collective Ex. 2 is comprised of respondent's joint tax return for the years 2004 and 2005. The 2005 return attributes income to her from an interior design business. The gross income was listed at $2673.00 and net income of $1054.00. The Court can find no income attributed to wife in the 2004 return.

The Court has no other evidence before it regarding wife's prior earnings. She did testify that she had not worked full time since the birth of her second child. There is no information from which the Court can even determine what she might be capable of earning. ***The Court finds that respondent is not responsible for one-half of the Webb School tuition because husband has not established by a preponderance of the evidence that she has ever become financially able to bear that expense.***

After the son's expulsion from Webb School and after having completed an intensive residential program to address his drug and alcohol abuse, along with other psychological problems, the son was enrolled at St. Andrews School at Sewanee. Husband testified that the parties agreed to St. Andrews because it was a school with a "rolling enrollment" and was relatively close by. Wife testified that she vehemently objected to enrollment in St. Andrews. In fact, her un-rebutted testimony was that her current husband proposed to petitioner

that the child reside locally week on and week off with his parents and go to school in Knoxville.

Wife's testimony regarding her objections is logical and reasonable given the circumstances. Further, St. Andre[w]s is governed by paragraph 6 of the MDA. Again, *the Court has no basis to determine her ability to pay one-half of the tuition at St. Andrews.*

Son was expelled from St. Andrews prior to completing a single semester. Thereafter, he was enrolled at Farragut High School again from which he was expelled. In the interim he had run away from home and was facing delinquency charges in Juvenile Court. Somewhere along the way he obtained his general equivalency diploma. In the summer of 2006, son learned that he had impregnated his girlfriend and that she was expecting a child.

On July 28, 2006, Ex. 1 was written from Mr. Hindman to [Wife]. The letter is self-explanatory but basically advises her that T.K. will be enrolled at Austin Peay University for the fall semester.

Again, [Wife] asserts that she strongly objected to her son going to Austin Peay. He had just been expelled from two private and one public high schools. He had just completed another intensive drug rehabilitation program at Cornerstone. Austin Peay was being chosen because it would accept a general equivalency diploma. The son had just learned that he was the father of a child. [Wife] testified that he was continuing to abuse drugs and alcohol.

Ex. 1 indicates Mr. Hindman had discussed Austin Peay with T.K. However, there is no mention of discussion with [Wife]. She testified that petitioner said that he was "shipping him (T.K.) off to Austin Peay." *There is nothing in this letter to reflect an agreement to send the child to Austin Peay. Wife is not responsible for one-half of the associated costs.*

As it turns out it appears that [Wife's] concerns were well founded. T.K. did not complete the semester at Austin Peay and returned to Knoxville. Ultimately he was enrolled at Pellissippi S[t]ate Community College and apparently has obtained an Associate's Degree there.

Wife again denies that she agreed to placement at Pellissippi State. She testified that her son was using drugs heavily at the time he enrolled. He had failed to complete a semester of college. It can hardly be said that he was

progressing satisfactorily in his education at that time. Wife testified that because of continuing drug and alcohol use she felt that he would fail. She also testified that she felt that money would be better spent on treatment and that further treatment should be obtained instead of spending money on education. ***Again, the Court finds that there was no agreement as to the enrollment at Pellissippi State Community College.***

Upon completion at Pellissippi State the son enrolled at the University of Tennessee. Petitioner testified that their son is now classified as a junior at the University of Tennessee and is only one semester behind his classmates from high school. It would appear that he is now satisfactorily progressing although neither side offered evidence to support this.

Wife argues that she cannot afford the University of Tennessee because she is not working. There is no "ability to pay" limitation regarding college. ***Wife agreed to pay one-half of the costs limited to that which would be charged by the University of Tennessee. Therefore, as long as he is satisfactorily progressing in school and absent some reasonable basis for not agreeing to his enrollment at the University of Tennessee, wife is obligated to pay one-half of the education expenses.***

However, Ex. 4 submitted by [Husband] shows that his expenditures include a generous allowance for food, cable television, cell phone, gasoline for the son's car and so forth. ***Wife's responsibility to pay is limited to the costs of tuition, housing, and food costs that would not exceed that which the University of Tennessee would normally charge.***

. . . Here the parties agreed that the University of Tennessee would be the benchmark for education expenses and further agreed that those expenses would be reasonable. . . .

After expulsion from Webb School the son attended the SUWS of Carolina program (referred to as the Wilderness program). ***The Court finds that the parties did agree that this was a reasonable and necessary program and the mother should pay one-half of that fee, as well as one-half of the fee of Mary Consoli, Education Consultant.***

CONCLUSION

The Court observes that in order to require contribution toward education

expense there must be an agreement between the parties as to the school the son will attend. Further, there must be a showing that the child is satisfactorily progressing with his education.

* * *

The petition asks that [Wife] be found in contempt of court for a willful failure to follow the court's orders. [Wife] testified that prior to the filing of the petition she had never been asked to pay anything toward either the treatment at the Wilderness program nor education expenses. She explained that in regard to the Wilderness program she was under the impression that it was covered by husband's insurance. Although husband indicated that the insurance did not cover it there was no proof that wife was ever advised that it did not.

Therefore, the Court declines to hold the wife in contempt.

Furthermore, prior to any contribution by the wife toward the education expenses the Morgan Keegan fund shall be applied to those costs.

* * *

(Emphasis added.) Husband subsequently filed a petition for a new trial or to alter or amend final judgment, arguing as follows:

[P]ursuant to Paragraph Six (6) of the [MDA] the parties agreed that each party would pay one half (½) of the educational expenses of the child, including books, tuition, room and board as long as the child was making satisfactory progress in school. The obligation applied to any education endeavor of the child that the parties, as joint custodians, agreed upon, including private, elementary, middle, high school and any college expenses up to the cost of the University of Tennessee.

That pursuant to the last paragraph on page six (6) of the [MDA], the parties clearly agreed that the minor child would be applying to Webb School in the fall of 1998. The [MDA] also states that "if the child attends Webb or any other private preparatory school and the Wife remains unmarried *and* financially unable to bear her portion of said expenses the Husband will, as additional periodic alimony, pay all of the tuition and expenses until the Wife is either remarried *or* her economic situation is such that she can bear this

-7-

expense."

> That based upon the express language of the [MDA] the parties clearly anticipated the Wife becoming financially able upon remarriage. Therefore, they used the conjunction "or" as opposed to the conjunction "and."

(Emphasis provided by Husband). After Husband's motion was heard by the trial court, an order modifying the original judgment was entered April 14, 2010, *nunc pro tunc* to May 18, 2009. The order provided as follows:

> Mother is required to reimburse the Father one half (½) the cost for Mary Consoli, Educational Consultant ($4,250.00), SUWS of Carolina ($19,625.00).

> . . . Mother is also responsible for one half (½) of the cost of Webb School from June, 2000, through February 2, 2009. The total cost for Webb School was Sixty Three Thousand Four Hundred Eighty One Dollars ($63,481.00).

> . . . Mother shall owe the Father one half (½) of the cost as outlined above for a total of Forty Three Thousand Six Hundred Seventy Eight Dollars ($43,678.00) as of February 2, 2009.

\* \* \*

Wife filed a timely appeal.

## II. ISSUE

We restate the issue presented by Wife as follows:

Did the trial court err in entering judgment for Husband upon a petition for contempt based upon a MDA providing for educational expenses when Husband, who was the proponent of the MDA, failed to introduce proof that a condition precedent to Wife's obligation to perform under the MDA had occurred.

## III. STANDARD OF REVIEW

The factual findings of the trial court are accorded a presumption of correctness, and

we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure de novo standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

## IV. DISCUSSION

Wife admits that the parties entered into a contract to essentially split Son's educational and medical expenses. She claims, however, that the duty to pay one-half of the educational expenses of Son was conditioned upon the child making "satisfactory progress in school." Wife asserts that this obligation was to apply to any educational endeavor of Son that the parties, as joint custodians, agreed upon, including private elementary, middle and high school, and any college expenses up to the cost of the University of Tennessee. Wife argues that as the proponent of the MDA, Husband bore the burden of proof with regard to fulfillment of the condition precedent to Wife's duty to pay her share of Son's educational expenses. *See John H. Moore & Sons v. Adams*, 324 S.W.2d 499, 501 (Tenn. Ct. App. 1959). She asserts that because there was no proof in this action with regard to Son's "satisfactory progress" at Webb or any other institution, her duty to pay per the terms of the MDA was never triggered. The court specifically held in its memorandum opinion and order "that in order to require contribution toward education expense . . . there must be a showing that the child is satisfactorily progressing with his education."

Contracts reserving to one party the right of satisfaction or approval of certain acts or conditions as a condition precedent to performance are recognized as valid in Tennessee. *Robeson & Weaver v. Ramsey*, 245 S.W. 413 (Tenn. 1922). A condition precedent assumed by a party must be fulfilled by him before he can demand performance of the other party. *Interstate Bldg. Corp. v. Hillis*, 66 S.W.2d 597 (Tenn. Ct. App. 1933); *Mack v. Hugger Bros. Constr. Co.*, 10 Tenn. App. 402 (1929).

Husband contends that Wife failed to plead or otherwise try by consent or implication, the affirmative defense of the non-performance of a condition precedent. Husband notes that as required by Tenn. R. Civ. P. 8.01, his petition set forth in numbered paragraphs a short and plain statement of his claim and entitlement to reimbursement of one-half of certain expenses. He argues that under Tenn. R. Civ. P. 8.02, Wife likewise was required to "state in short and plain terms . . . her defenses to each claim asserted and . . . admit or deny the averments upon which the adverse party relies. . . ." He further observes that under Rule 8.03, Affirmative Defenses, Wife was required to:

set forth affirmatively facts in short and plain terms relied upon to constitute accord and satisfaction, arbitration and award, . . . estoppel, failure of consideration, . . . and any other matter constituting an affirmative defense. . . .

In paragraph 3 of Husband's petition for contempt, Husband averred that he had personally paid all the educational expenses for Son at Webb. Wife admitted to this averment in her answer and amended answer, without qualification or assertion of any defense as to the non-performance of a condition precedent. Paragraphs 5 and 8 of the petition alleged Husband's payment for the residential treatment program and Wife's refusal to pay for one-half of its cost. The answer and amended answer of Wife admit refusing to pay one-half of the cost but only qualify or defend on the bases of lack of consultation or possible insurance coverage, not because of non-performance of any condition precedent. Although Wife specifically set forth four separate affirmative defenses in her original answer and eight separate affirmative defenses in her amended answer, she failed to plead or even mention the affirmative defense of non-performance of a condition precedent. Furthermore, Wife admits that she failed to put on any proof at trial of what she considered to be "satisfactory progress in school." She did not raise the argument that Husband had neglected to establish that Son's progress at Webb, prior to the expulsion, was unsatisfactory.[1]

Clearly, "[t]he non-performance of a condition precedent is an affirmative defense that must be plead. Tenn. R. Civ. P. 9.03. If it is not properly raised in the trial court, it will not be considered on appeal." *Harlan v. Hardaway*, 796 S.W.2d 953, 957 (Tenn. Ct. App. 1990) (citing *Mack v. Hugger Bros. Constr. Co.*, 10 Tenn. App. 402, 419 (1929)). Wife simply failed to plead or otherwise properly raise the affirmative defense of non-performance of a condition precedent at the trial court level. As a result, we find that the affirmative defense of non-performance of a condition precedent has been waived and cannot and will not be considered for the first time on appeal. *Harlan*, 796 S.W.2d at 957.

As to the assessment for one-half of medical expenses not covered by Husband's insurance, the MDA clearly provides that "[a]ll medical, pharmaceutical, . . . psychological . . . expenses not covered by said insurance shall be borne by the Husband until re-marriage of the Wife at which time all of the aforementioned medical expenses will be paid equally . . . ."

---

[1]We note that the trial court determined Wife "vehemently objected to enrollment in St. Andrews," "strongly objected to her son going to Austin Peay," and "denie[d] that she agreed to placement at Pellissippi State." Regarding Webb, the record is silent, other than the fact that Son attended there for four years - Fall 2000 to Fall 2004.

We find the trial court's interpretation of the provisions of the MDA relating to educational and medical expenses is supported by a preponderance of the evidence.

## V. CONCLUSION

The judgment of the trial court is affirmed and this case is remanded for collection of the costs below.  Costs on appeal are taxed the appellant, Louise Helen Hindman (Dover).

_____
JOHN W. McCLARTY, JUDGE